UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Ricky Burchfield, § § § *Plaintiff,* § § v. § § Kilolo Kijakazi, § Acting Commissioner of Social § Security, § § *Defendant.* § | Civil Action No. 4:21-cv-01755 |

## MEMORANDUM AND RECOMMENDATION

This is an appeal from an administrative ruling that denied Plaintiff Ricky Burchfield's request for social security benefits, which was referred to the undersigned judge. Dkt. 21. After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court recommends granting Burchfield's motion for summary judgment (Dkt. 17) and denying Defendant Kilolo Kijakazi's cross-motion for summary judgment (Dkt. 23).

## Background

Burchfield filed for social security benefits on April 3, 2019, claiming a disability onset date of October 29, 2018. R.14. Burchfield reported that he suffered from a shattered left elbow, pin in his left shoulder, arthritis, anxiety, and depression. R.234. He also claimed that he needed a hip replacement. *Id.*

When Burchfield filed for benefits, he was 56 years old. R.24. He had been a roofer for thirty years—the entirety of his career, excluding a two-year break when he worked as a pipeline company's flagger. R.235.

Burchfield's application was denied initially on September 19, 2019 and upon reconsideration on February 10, 2020. R.14. Burchfield requested a hearing, which was held on October 8, 2020. *See* R.32-74. At the hearing, Burchfield, a medical expert, and a vocational expert testified.

Burchfield testified that he had been a roofer "all [his] life" since learning the trade from his father and uncle. R.52. From 2015 to 2018, he owned his own company, which required him to perform some office duties in addition to his physical labor. R.47. Those duties included maintaining records, managing a schedule, and overseeing employees. *Id*. Burchfield claimed that he stopped working as a roofer because he fell off his ladder and injured his hip on a cement hill. R.58. After returning to work, he fell again, fracturing his elbow and re-injuring his hips. *Id*.

As a result of his injuries, Burchfield has trouble lifting and reliably gripping anything with his non-dominant hand and can only walk for one or two hours before he needs to rely on a walker. R.58-59. He also claimed that he needed at least a day of recovery after those hours-long walks and that the hip pain was caused by bone-on-bone contact in the joint. R.59-60.

In the middle of Burchfield's testimony, the ALJ called Dr. Alice Cox, a board-certified family doctor who had reviewed Burchfield's medical history. R.37-45. Dr. Cox confirmed the bone fractures and accidents reflected in the medical records, acknowledging that Burchfield "does have a number of very significant limitations, not the least of which actually, his morbid obesity" which impacts his hips and knees. R.41-42. But she testified that Burchfield responded well to surgeries and treatments, R.38, and it appeared that he could lift and carry 10 pounds frequently and 20 pounds occasionally and that he could sit, stand, and walk six hours each day, provided that he had an option to change his posture, R.42-44.

After the medical testimony, the ALJ questioned a neutral vocational expert about suitable jobs for a hypothetical person with Burchfield's functional capacity, age, education, and transferable work skills. R.62-73. The vocational expert answered the ALJ's hypotheticals by identifying work as a dispatcher, counter clerk, sales clerk, data entry clerk, timekeeping clerk, telephone solicitor, general office clerk, and security guard. R.65-70. He also testified that he was familiar with these jobs because he had placed individuals in each role and because he had accounted for their requirements and limitations consistent with the Department of Labor's Dictionary of Occupational Titles (DOT). R.70.

At the end of the hearing, Burchfield asked the ALJ if he could have clarification about the vocational expert's testimony—particularly whether he would need to be able to type or use a computer for any of the potential jobs. R.71. He claimed that he could not do either, and that his wife handled those tasks when he ran his own roofing company. *Id.*

The vocational expert testified that someone who could not use a typewriter or computer would have a "significant vocational handicap." R.72. The expert admitted that his prior recommendations for potential jobs did not account for that handicap because the ALJ's hypotheticals did not include that limitation. *Id.* Then, he described how the handicap may affect the different jobs he had recommended: a counter clerk or security guard would not need to use a keyboard, but a timekeeping clerk, telephone solicitor, dispatcher, and general office clerk would. R.72-73. The use of a typewriter or computer was significant enough to the vocational expert that, if Burchfield could only work in a general office clerk role *without* that requirement, he "would reduce the numbers [of jobs available in the national economy] by 50 percent." R.72. With that late-stage correction by Burchfield and the vocational expert, the ALJ concluded the hearing. R.73.

On October 29, 2020, the ALJ issued an opinion finding that Burchfield was not disabled. R.14-27. At steps one and two, the ALJ found that Burchfield met the insured status requirements of the Social Security Act and

4

that he had not engaged in substantial gainful activity since his alleged onset date. R.17. At step three, the ALJ found that Burchfield suffered from numerous severe impairments: left open distal humerus fracture with status-post open reduction internal fixation, osteoarthritis and bursitis of the bilateral hips, osteoarthritis of the left shoulder, cervical and lumbar spondylosis, adjustment disorder, anxiety disorder, obesity, rotator cuff impingement syndrome, and substance abuse. *Id.* Nonetheless, the ALJ concluded that Burchfield was not presumptively disabled upon finding that none of his impairments met or equaled a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. R.18-20.

The ALJ then determined that Burchfield had a residual functional capacity (RFC) to perform work at a light exertional capacity, with myriad limitations and nuances:

> The claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes or scaffolds, and he can occasionally climb stairs and ramps. He can occasionally balance, kneel, stoop, crouch, and crawl. He cannot perform overhead reaching with his upper left non-dominant upper extremity, but he can reach occasionally in all other directions with his non-dominant upper left extremity. He can frequently use his upper left non-dominant extremity for handling, fingering and feeling. He needs a sit/stand, at will, option. He can understand, remember and apply information in order to carry out work related activities regarding detailed, but not complex, instructions. He can concentrate, keep pace, and persist for 2-hour periods with customary breaks during an 8-hour workday. He cannot perform fast-paced production work. He can frequently interact with supervisors, coworkers, and the general

5

>public. He can respond appropriately to changes in routine work setting, and he can accept instructions and make decisions in a routine work setting.

R.20. Given this RFC, the ALJ found that Burchfield could no longer perform his past relevant work as a roofer, but that his time running his own roofing company gave him transferrable skills. R.24-25. The ALJ then relied on the vocational expert to find that Burchfield's physical limitations would not preclude him from work as a security guard or, alternatively, that he could use his transferable skills to work as a general office clerk. R.24-27. The opinion did not discuss other jobs that the vocational expert had identified. *Id.*

Burchfield unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, R.1-3, which rendered the ALJ's decision ripe for this Court's review. *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial

evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment;

7

(4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II. The ALJ failed to develop the record and reconcile inconsistencies in step five of her analysis.

On appeal, Burchfield argues (1) that substantial evidence does not support the ALJ's RFC determination that Burchfield could perform light work; (2) that the ALJ relied on inconsistent testimony from the vocational expert to find that he could work as a security guard or office clerk; and (3)

8

that the ALJ's wrongful reliance on the vocational expert caused the ALJ to apply the wrong grid rule to Burchfield.

The ALJ's opinion contains multiple errors and ambiguities that undermine the integrity of the entire opinion. For example, a paragraph-long typographical error—which appears to be a portion of Burchfield's RFC copied into the inappropriate section—appears on the last page of the ALJ's opinion. R.27. The opinion also repeatedly references DOT #209.687-010 for the description of the "general office clerk" job that the ALJ and vocational expert believed Burchfield could perform. *See* R.25, 57. But that entry describes a different job ("Checker II") that was never suggested as a potential fit for someone of Burchfield's age, experience, and work history. *Compare* DOT 209.687-010, 1991 WL 671809 (Checker II), *with* DOT 209.562-010, 1991 WL 671792 (General Office Clerk); *see also* R.47-73 (testimony of vocational expert). This error remained unaddressed until Burchfield raised it in this appeal, though the Commissioner continued to use the incorrect DOT entry number. *See* Dkts. 17 at 9-10 (Burchfield's motion), 23 (Commissioner's motion), 26 at 7 (Burchfield's response).

But because the ALJ committed legal error by failing to develop the record and resolve inconsistencies between Burchfield's RFC and available work in the national economy, the Court declines to address Burchfield's first and third issues. Remand is recommended based on the second issue alone.

9

### A. The ALJ failed to resolve inconsistencies about Burchfield's ability to work as a security guard.

The ALJ found that, despite extensive physical limitations contained in his RFC, Burchfield could work as a security guard (DOT #372.667-038).[1] The DOT entry for security guard lists the "strength" requirement as "light work." DOT 372.667-038, 1991 WL 673101. But it goes on to describe a number of physical activities that require a somewhat considerable amount of exertion on behalf of the employee. This includes asking the employee to "investigate[] disturbances," "stand[] guard during counting of daily cash receipts," and "apprehend[] unauthorized persons." *Id.* This last requirement is particularly eyebrow-raising, considering that this job is classified as having the same level of exertional requirements as "ballpoint pen cartridge tester." *See* DOT 733.281-101, 1991 WL 679903 (requiring light work exertional level for a worker who "[i]nserts cartridges into holding devices ... starts machine that moves paper, and counts circular marks made by cartridges").

Burchfield's RFC imposes a considerable number of limitations on his physical abilities. For example, he cannot "climb ropes, ladders, or scaffolds,"

---

[1] The Court notes that the DOT number listed here actually corresponds to a listing for a "Merchant Patroller." *See* 1991 WL 673101. Although this listing includes "Security Guard" as an alternate title, *id.*, there is a separate DOT listing for the specific job of security guard, DOT 372.667-034, 1991 WL 673100. Because that other listing is not materially different from the merchant patroller listing, the difference in nomenclature does not affect the Court's analysis.

he can only occasionally "balance, kneel, stoop, crouch, [or] crawl," the use of his non-dominant is restricted to occasional reaching, and he must have an "sit/stand, at will, option." R.20. Further, the ALJ acknowledged that Burchfield uses a walker when he becomes tired. R.21. How a person with this level of limitation can be expected to "apprehend unauthorized persons" is glaringly inconsistent, such that the ALJ should have inquired as to why this job would be suitable for Burchfield. *See* SSR 00-4p, 2000 WL 1898704, at *2; *see also Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (recognizing that inconsistencies between the DOT listing and the VE's testimony must be resolved on the record). Notably, the ALJ's opinion does not provide any further support to why Burchfield can perform this work—hedging, instead, that "even if the security guard job were to be eliminated, there are a significant number of general office clerk jobs in the national economy." R.26.

The Court concludes that the ALJ's opinion that Burchfield can work as a security guard is not supported by substantial evidence. Burchfield's RFC portions requiring an at will sit/stand option, as well as his upper body physical limitations, stand in stark contrast to the requirements to "stand guard" or "apprehend unauthorized persons." *Compare* DOT 372.667-038, 1991 WL 673101 with R.20, 21, 67. As Burchfield correctly notes, the ALJ has essentially asked him to "detain people with one arm tied behind his back." Dkt. 17 at 9. Other courts that have addressed this very issue have come to

11

the same conclusion. Most notably, the Tenth Circuit in *Lohse v. Shalala*, reversed an ALJ's ruling under similar circumstances. 1994 WL 263699, at *6 (10th Cir. 1994) (emphasizing that "the ALJ failed to consider plaintiff's ability to apprehend and restrain people, a somewhat unusual requirement of these otherwise 'light' jobs"); *see also Ali v. Astrue*, 2009 WL 3713062, at *6 (W.D. Wash. Nov. 3, 2009) ("The type of work under this DOT [listing] also exceeds the limitation the ALJ placed on the expert to identify jobs involving only occasional use of ramps, stairs, ladders ropes and scaffolds.").

The Commissioner's attempt to defend the ALJ's conclusion is unavailing. First, the Commissioner invokes SSR 00-4p, which contains a provision that states "the DOT lists maximum requirements of occupations as generally performed ...." *See* Dkt. 23 at 14 (citing SSR 00-4p, 2000 WL 1898704, at *3). But the Commissioner flatly misreads this part of the SSR. The quoted section is *an example* for what a permissible explanation of an inconsistency between a VE's testimony and a DOT listing would look like. *See* SSR 00-4p, 2000 WL 1898704, at *2 ("Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following"). To gain the benefit of such an explanation, the ALJ is obligated to obtain such an explanation from the vocational expert.

For the same reason, the Court is not persuaded by the Commissioner's second argument, which insists that there is a reasonable explanation for the inconsistencies between the vocational expert's testimony and the DOT, given that the expert maintained that his testimony comports with the DOT and that he had previously placed individuals in all of the jobs cited. *See* Dkt. 23 at 14-15. To pass muster under SSR 00-4p, the ALJ must resolve contradictions in the testimony on the record in a manner that adequately permits judicial review. *See* SSR 00-4p, 2000 WL 1898704, at *2; *see also Mims v. Kijakazi*, 2022 WL 884852, *2 (N.D. Miss. Mar. 24, 2022) (remanding to the agency when the ALJ failed to resolve an apparent conflict in the vocational expert's testimony and the DOT). The vocational expert's statement that his testimony was consistent with the DOT holds little water, as the ALJ recognized that there was a conflict in his testimony but nonetheless relied on it without eliciting the necessary clarification. R.25-26 (noting inconsistencies and providing a lengthy, and erroneous, explanation).

The requirement of SSR 00-4p controls. When an actual or apparent conflict exists between the vocational expert's testimony and the DOT requirements for a profession, the ALJ "must elicit a reasonable explanation for the conflict *before* relying on the [vocational expert] ... evidence to support a determination about whether the claimant is disabled." SSR 00-4p, 2000 WL

13

1898704, at *2 (emphasis added). The ALJ elicited no such explanation about the security guard job position, *see* R.67-74, and failing to do so was legal error.

### B. The ALJ failed to resolve inconsistencies about Burchfield's ability to work as an office clerk.

The ALJ's error in determining that Burchfield could work as an office clerk is even more straightforward, although the ALJ treated it as a fallback in the event that Burchfield could not work as a security guard. R.26. The ALJ recognized that the vocational expert's testimony was inconsistent with the DOT with respect to *both* jobs, but attempted to reconcile the general office clerk job with the following findings:

> The vocational expert gave a reduction of 10% for the general office clerk job due to the limitations regarding the use of the upper extremities in the established residual functional capacity. The vocational expert also said that use of a sit/stand at will option would reduce the general office clerk job by 50%. The vocational expert testified that with the use of the sit/stand option and the need for occasional use of the left nondominant upper extremity for reaching in all directions but none overhead, the general office clerk job would be reduced by 60%. As such, the undersigned reduced the general office clerk job by 60%.

R.26. The ALJ proceeded to acknowledge that Burchfield could not use a computer or typewriter, and so "several of the jobs the vocational expert originally gave were not found to be suitable for transferable skills." R.26. Nevertheless, the ALJ concluded that Burchfield's transferable office skills "would permit [him] to be able to do the job of the general office clerk which exists in significant numbers in the national economy." *Id.* With these

14

findings, the ALJ found that, after a 60% reduction to the job pool, 640,000 general office clerk jobs were available to Burchfield. R.25.

There is virtually no support in the record for the ALJ's conclusions. *See generally Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000) (substantial evidence review applies to an ALJ's step five determination that a claimant can do a particular job); *Lirley v. Barnhart*, 124 F. App'x 283, 283 (5th Cir. 2005) (substantial evidence review applies to whether a significant number of jobs exist in the national economy); *Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617-19 (E.D. Tex. 2009) (same). The vocational expert stated that Burchfield's limited use of his non-dominant hand would be a "major, major vocational difference" that would reduce the availability of *all* jobs by 10%. R.57. But otherwise, the ALJ's conclusions conflict with the vocational expert's testimony.

To accommodate Burchfield's need for a sit/stand option, the vocational expert testified that otherwise-appropriate jobs such as counter clerk and sales would be precluded. R.64. For the remaining job of general office clerk, the expert testified that the number of available jobs would need to be reduced significantly:

> Q. Okay. So, the general office clerk is the only one that remains, and that is reduced by some amount?
>
> A. Yeah. It would be reduced, I would say, by about a quarter, 25 percent.

15

R.65. Then, when faced with the nuance that Burchfield could not type or use a computer, the vocational expert altered his prior testimony to account for that "significant vocational handicap":

> The general office clerk would generally use one or the other to a limited degree. It might reduce the number of jobs by *50 percent*, if we assumed no involvement with a computer or a typewriter. There's still filing, there's distribution of materials, there's general – as the name suggests, general office clerk, there are things that don't involve using any machines, but I would reduce the numbers by *50 percent on the general office clerk*.

R.72 (emphasis added).

Thus, the record supported a 10% reduction for Burchfield's inability to use his non-dominant hand, a 25% reduction for his sit/stand requirement, and a 50% reduction for his inability to use keyboards—a total 85% reduction. Yet the ALJ accounted only for a 60% reduction, all while purporting to accept and incorporate the vocational expert's conflicting percentages. R.25-26. Her conclusions are unsupported by evidence, let alone substantial evidence. The ALJ's error also makes it unclear whether Burchfield can do the job of general office clerk at all and whether the 15% of remaining general office clerk jobs still constitutes a "significant" number of available jobs in the national economy. *See* 20 C.F.R. § 404.1566 ("[The Commissioner] consider[s] that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country."); *Gaspard*, 609 F. Supp. 618-19 (discussing case law about what number constitutes a

16

"significant" number of available jobs). Burchfield is thus correct that the ALJ's conclusions at step five are untenable.

### C. The ALJ's failure was prejudicial.

Having concluded that the ALJ erred when determining that Burchfield could work as a security guard or a general office clerk, the last question is whether the failure caused prejudice. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected."). A claimant must show that she "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). That is the case here.

The ALJ identified only two potential jobs that Burchfield could perform—security guard and general office clerk. R.24-27. Although the vocational expert mentioned additional jobs that may be suitable, those jobs were wholly omitted from the ALJ's analysis and, in any event, required at least a "superficial" amount of typing or computer use—which Burchfield indicated that he could not perform. *Id.*; R.71-73.

Had the ALJ inquired further and developed the record, she may have recognized the conflict between Burchfield's limitations and the vocational expert's recommendations. If so, the ALJ could have found that Burchfield cannot perform any work that exists in the national economy—thus entitling

17

him to disability benefits. In short, the ALJ's failure to develop the record could have altered the result. *See Kane*, 731 F.2d at 1220; *see also, e.g.*, *Beaupre v. Berryhill*, 2020 WL 343698, at *6 (D. Nev. Jan. 21, 2020) Accordingly, the Court recommends remand for further proceedings.

### Recommendation

Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 17) be **GRANTED**, that Defendant's Motion for Summary Judgment (Dkt. 23) be **DENIED**, that the decision of the Commission of the Social Security Administration be **VACATED**, and the matter be **REMANDED** for further administrative proceedings.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** ***Ortiz v. City of San Antonio Fire Dep't***, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on September 1, 2022 at Houston, Texas.

Yvonne Y. Ho
United States Magistrate Judge